# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, ) ) ) Plaintiff, ) ) v. ) ) EXECUTIVE OFFICE OF THE PRESIDENT, et al., ) ) ) Defendants. ) | Civil No. 07-01707 (HHK) |
| NATIONAL SECURITY ARCHIVE, ) ) Plaintiff, ) ) v. ) ) EXECUTIVE OFFICE OF THE PRESIDENT, et al., ) ) ) Defendants. ) | Civil No. 07-01577 (HHK) |

## PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO CONDUCT EXPEDITED DISCOVERY AND MOTION TO COMPEL RULE 26(f) CONFERENCE

Having failed for the duration of this administration to restore and preserve electronic records, the White House defendants now seek to avoid completely any accountability for their unlawful actions through litigation tactics they have employed repeatedly in other lawsuits. CREW's request for expedited discovery should be denied, the defendants argue, because they intend to file a dispositive motion arguing that CREW lacks standing to maintain this lawsuit. No such motion has yet been filed; indeed, the time for defendants to answer the complaint brought by the National Security Archive has come and gone with no response whatsoever,

beyond a last-minute request for a time extension that to date has not been granted.[1]  Under these circumstances, defendants' threatened motion to dismiss is nothing short of a stalling tactic that should not be countenanced by this Court.

Moreover, the White House defendants' opposition rests on a fundamental mischaracterization of the nature and purpose of the discovery CREW seeks.  The goal of this discovery is preservation of the status quo; it is aimed at ensuring the White House defendants do not alter the status quo by destroying data that could be used to restore the millions of deleted White House emails.  In this way CREW's requested discovery will give full force and effect to the preservation order this Court has already entered.  Accordingly, defendants' reliance on case law concerning merits-based discovery in cases brought under the Administrative Procedure Act ("APA"), even if applicable here (which it is not), is misplaced.  CREW is simply not seeking discovery on the merits of its claims.

Discovery is also necessitated by the White House defendants' own conduct.  As caretakers for the historical records of this presidency, defendants owe the public some explanation for and reassurance regarding what they are doing with the public's documents.  Their narrowly parsed explanations and refusal to provide even the most basic information about what they are preserving fall far short of fulfilling this responsibility.

### 1. Defendants' stated intent to file a motion to dismiss does not provide a basis to deny CREW's request for expedited discovery.

Defendants first argue that because they intend to file a dispositive motion, discovery at this juncture is not appropriate.  This argument is without merit for three independent reasons.

---

[1] There is no provision in the Federal Rules of Civil Procedure that excuses a party's failure to answer a complaint based on a pending motion for an enlargement of time.

First and foremost, no such motion is pending, making this case decidedly different than those cited by defendants. See Defendants' Consolidated Opposition to Plaintiff's Motions for Leave to Conduct Expedited Discovery and Motion to Compel Rule 26(f) Conference ("Ds' Consol. Opp.") at 12. All the cases on which defendants rely involved requests for discovery while a dispositive motion was pending and a critical part of the court's analysis was assessing whether the requested discovery was necessary to decide the pending motion. See, e.g., Patterson v. U.S., 901 F.2d 927, 929 (11th Cir. 1990) (discovery denied where court had sufficient information before it to rule on pending dispositive motion); Chavous v. D.C. Financial Responsibility & Mgt. Assistance Auth., 201 F.R.D. 1, 6-7 (D.D.C. 2001) ("A trial court 'ordinarily should not stay discovery which is necessary to gather facts in order to defend against [a] motion [to dismiss].'"(citation omitted)). Here, by contrast, no such motion is pending. Instead, we have only defendants' representation that they will be filing a motion, a representation that standing alone does not afford the Court any basis to conclude discovery now is unwarranted.

Second, as explained in CREW's motion for expedited discovery, there is an urgent need for discovery now to protect against further record destruction and ensure that the greatest number of records are preserved. While the Court's recently entered order mandating preservation of all media created with the intention of preserving data from inadvertent destruction goes a long way toward meeting this goal, there remain critical unanswered questions that may require expanding that order. For example, the White House defendants have refused to answer any of CREW's requests for information about what back-up media presently exist that are being preserved by the Office of Administration, beyond the description of "disaster

3

recovery tapes." If it turns out that the back-up tapes originally considered by the White House for use in restoring the missing email no longer exist, it will be necessary and appropriate to explore what other copies exist that should be preserved, whether or not they were originally created with the intention of preserving data from inadvertent destruction.

Just as troubling, defendants' counsel has made clear that defendants' compliance with the Court's preservation order is based on defendants' view of what is relevant, not the express language of the order. For example, their counsel represented that defendants are preserving only back-up tapes in the possession of the Office of Administration ("OA") that are from "the official, unclassified Executive Office of the President email system,"[2] a phrase never before used in this litigation. When CREW inquired as to the meaning of this phrase,[3] defendants' counsel responded that this system "is the only email system relevant to the allegations in your complaint." Letter from Helen Hong to Anne Weismann, November 16, 2007 ("Hong 11/16 Letter") (attached as Exhibit 3). Further, defendants have refused to state whether the back-up copies they are preserving pursuant to the Court's order include the back-up tapes created by the OA when it first discovered the missing emails, data stored on the White House's EMC Storage Area Network (a system created as a back-up), the back-up tapes the OA's recovery plan proposed using to use to restore the missing email and DVDs maintained by the White House Office of Records Management that contain selective sets of emails. See Weismann 11/15 Letter and Hong 11/16 Letter. Indeed, not only have defendants refused to answer plaintiff's questions

---

[2] Letter from Helen Hong to Anne Weismann, November 14, 2007 ("Hong 11/14 Letter") (attached as Exhibit 1).

[3] See Letter from Anne Weismann to Helen Hong, November 15, 2007 ("Weismann 11/15 Letter") (attached as Exhibit 2).

about their compliance -- questions that stem from the White House's public statements about what they are doing to comply with the preservation order[4] – but they have criticized CREW for engaging in what they dismissively label a "letter-writing campaign."  Hong 11/16 Letter.

CREW's requested discovery is aimed precisely at gathering this information.  Yet if CREW is forced to wait until the defendants' promised motion is finally filed and resolved to conduct this discovery, the resulting delay could mean further document destruction, including destruction of the only remaining copies of deleted emails, as well as destruction of electronic records created after October 2005 that are still not being properly managed in an electronic record-keeping system.  This is because, as the White House defendants have declared to CREW, "[t]he Order cannot be read to require preservation of 'other portable memory storage devices and all other back-up copies under the possession, custody or control of any and all defendants.'"  Hong 11/14 Letter.  The threat that such documents could be destroyed pending resolution of any dispositive motion defendants may file is "a text book example of irreparable harm," particularly given the strong public interest in preserving emails that "may have historical and public importance."  Report and Recommendation, October 19, 2007, p. 3.

Third, defendants' anticipated motion rests on make-weight arguments that do not provide a sufficient basis to place at risk the records of this presidency.  The notion that CREW -- a frequent requester under the Freedom of Information Act ("FOIA") with pending FOIA requests of multiple EOP agencies for records and a demonstrated commitment to making government records accessible to the public -- does not have standing to challenge as contrary to

---

[4] See Letter from Anne Weismann to Helen Hong, November 13, 2007 ("Weismann 11/13 Letter") (attached as Exhibit 4).

law the defendants' failure to comply with record-keeping statutes is, charitably speaking, a strained argument.

To invoke the Court's jurisdiction under Article III of the Constitution, a plaintiff must demonstrate, as an "irreducible constitutional minimum," Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992), an injury-in-fact that is "fairly traceable" to the challenged act and "likely to be redressed by the requested relief." Allen v. Wright, 468 U.S. 737, 751 (1984). CREW's injury, an inability to obtain through the FOIA information necessary to accomplish CREW's mission, is directly traceable to the White House defendants' unlawful document retention policies and procedures. Accordingly, CREW has standing to sue.

In arguing that CREW has not suffered an injury-in-fact, defendants reply exclusively on the district court and court of appeals rulings in Am. Friends Serv. Comm. v. Webster, 720 F.2d 29, 46 (D.C. Cir. 1983) and 485 F.Supp. 222, 224 (D.D.C. 1980). See Ds' Consol. Opp. at 13. According to defendants, this Circuit has suggested that the sufficiency of a claim of harm based on the denial of access to records is "questionable." Id. The law, in fact, is to the contrary.

First, the D.C. Circuit's discussion of standing in Webster focuses exclusively on whether the plaintiffs were within the zone of interests of the federal record-keeping laws, as this was the only standing issue the government was challenging on appeal. 720 F.2d at 47. Thus, its opinion cannot properly be read as questioning the standing of a group like CREW that uses information derived from the FOIA to achieve its core mission and that has been frustrated in meeting its mission by the White House defendants' policy of knowingly using an email storage system that is susceptible to electronic records being destroyed -- a practice that has deprived CREW of access to documents responsive to its FOIA requests. Article III requires nothing

more.  Compare Spann v. Colonial Village, Inc., 899 F.2d 24, 27 (D.C. Cir. 1990) ("if an

organization points to a concrete and demonstrable injury to its activities . . .the organization

passes through the first [standing] gateway").

      Moreover, contrary to defendants' suggestion, post-Webster cases make clear that denial

of information such as that occurring here constitutes an injury-in-fact.  For example, in Federal

Election Comm'n v. Akins, 524 U.S. 11 (1998), the Supreme Court found that a plaintiff had

standing to challenge the Commission's refusal to disclose campaign-related contributions and

expenditures as the Federal Election Campaign Act requires, reasoning that informational harm

is sufficiently concrete and specific to constitute an injury-in-fact.  Likewise in Public Citizen v.

Dep't of Justice, 491 U.S. 440 (1989), the Supreme Court recognized that denial of access to

committee meetings and records under the Federal Advisory Committee Act constituted an

injury-in-fact for Article III purposes.  And, in Dep't of Justice v. Reporters Comm. for Freedom

of the Press, 489 U.S. 749 (1989), a suit under the FOIA challenging the agency's denial of a

request for specific agency records, standing was satisfied by the denial of the requested records.

      The defendants also argue that CREW cannot establish that its injury is redressable

because full relief is dependent on the actions of the attorney general, who is not a party to this

suit.  This argument, if accepted, would make a nullity of the D.C. Circuit's determination in

Armstrong v. Bush, 924 F.2d 282, 295 (D.C. Cir. 1991), that suits such as CREW's are critical to

ensure that the enforcement and oversight provisions of the Federal Records Act function as

Congress intended.  As the Court explained,

> Unless the Archivist notifies the agency head (and, if necessary,
> Congress) and requests the Attorney General to initiate legal
> action, the administrative enforcement and congressional over-
> sight provisions will not be triggered, and there will be no

> effective way to prevent the destruction or removal of records.
> Thus, if the agency head or Archivist does nothing while an
> agency official destroys or removes records in contravention of
> agency guidelines and directives, private litigants may bring
> suit to require the agency head and Archivist to fulfill their
> statutory duty to notify Congress and ask the Attorney
> General to initiate legal action.

Id.

Simply stated, the defendants have failed to fulfill their mandatory statutory duties, a violation that would be redressed by an order of this Court directing them to notify Congress and request that the attorney general initiate legal action. Moreover, defendants' redressability arguments are tantamount to saying that no one save the attorney general can bring suit to enforce the provisions of the FRA, a proposition that is directly contradicted by the D.C. Circuit's decision in Armstrong.

**2. The APA does not provide a basis to deny the requested discovery.**

Defendants also argue that because this case arises under the APA, discovery is not appropriate. Again, their resistance to expedited discovery is grounded on a mischaracterization of the basis for plaintiffs' request as merits-based. Ds' Consol. Opp. at 2, 18. As discussed above, this misstates the nature of the discovery plaintiff seeks at this juncture.

Specifically, plaintiff seeks to obtain specific facts that defendants have, to date, refused to supply, concerning the quantum and type of existing electronic data generated and stored by defendants as well as their mechanisms for storing such data. While the merits of plaintiff's claims will not depend directly upon this inquiry, the inquiry is critical to ensuring that the Court's preservation order is properly implemented. Without information about the volume of data at issue and how it is stored, this Court has no way to determine whether the defendants are

in fact complying with its order. Accordingly, the fact that, as a general matter, discovery is often not appropriate in APA actions is of no moment here, where the requested discovery is not merit-based, but based on the need to ensure document preservation during the pendency of this lawsuit.

Moreover, this Court has inherent powers to grant plaintiff's requested discovery. The court in Pueblo of Laguna v. U.S. recognized this in ruling on the plaintiff's request for an order that would "direct[] various government agencies to take steps to ensure the preservation and availability of documents, in various media, potentially relating to [Plaintiff's] claims against the government." 60 Fed. Cl. 133, 134 (Fed. Cl. 2004). The Court entered the requested order based, in part, on its "inherent power to regulate its proceedings and maintain the integrity of its functions." Id., *citing* Link v. Wabash R.R. Co., 370 U.S. 626, 630-31 (1962) (such inherent powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."). See also U.S. v. Reynolds, 345 U.S. 1, 9-10 (1953) ("Judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers.").

Defendants also ignore the express precedent of Armstrong v. Bush, 807 F.Supp. 816 (D.D.C. 1992), which provides broad support for a plaintiff's discovery rights in an action under the Federal Records Act for declaratory and injunctive relief where the underlying suit is filed pursuant to the APA. In Armstrong, the plaintiffs sought declaratory and injunctive relief under the Federal Records Act and the APA to prevent the Executive Office of the President, the archivist, and the National Security Council from erasing any material stored on the defendants' internal electronic mail communication systems. The plaintiffs sought and received a temporary

9

restraining order requiring that the information on the electronic communication systems be preserved until the court decided the underlying case on the merits.  Id. at 823.  Prior to this order plaintiffs were permitted to conduct discovery relating to the electronic communication system --  discovery that occurred even though the case was brought under the APA.  Id. at 818.  Compare Cobell v. Norton, 201 F. Supp. 2d 145, 147 (D.D.C. 2002) (court not only entered temporary restraining order requiring preservation of records based on evidence of defendants' "slipshod and haphazard" management of Indian trust fund accounts at issue, but also appointed special master to make emergency, unannounced site visits to records center to determine if trust records had been destroyed).

  As this case law makes clear, it is a proper exercise of the court's inherent power to grant leave to conduct discovery where, as here, such discovery is necessary to ensure document preservation pending a ruling on the merits.  That the instant case is brought under the APA does not provide a basis to deviate from this course.  Indeed, now that the Court has entered a preservation order the requested expedited discovery is all the more warranted to ensure the efficacy of that order.

  Defendants nevertheless urge this Court to apply the more stringent standard articulated in Commercial Drapery Contractors, Inc. v. U.S., 133 F.3d 1, 7 (D.C. Cir. 1998), under which a plaintiff in an APA action seeking discovery beyond the "administrative record" must make out a "strong showing of bad faith or improper behavior" by the defendant, or show that "the record is so bare that it prevents effective judicial review."  Ds' Consol. Opp. at 15.  This argument ignores the Court's inherent power to order discover necessary to ensure the viability of its own preservation order.

Moreover, even if this Court were to apply the <u>Commercial Drapery</u> standard in ruling on plaintiff's motion, such standard is plainly satisfied. To date, defendants have not proffered any "administrative record" for the Court to evaluate in assessing their compliance with the preservation order on a going-forward basis.[5] The record is thus entirely "bare," so much so as to prevent effective judicial review. Moreover, there are serious questions of bad faith and improper conduct; the claims in this case are premised on the fact that although defendant OA became aware in October 2005 that millions of e-mails dating from March 2003 through October 2005 had gone missing from White House servers, the White House rejected a plan to recover the missing e-mails and to date has still not put in place an effective electronic records management system. Complaint, ¶¶ 34, 36-40. Defendants have not denied any of these allegations. Accordingly, CREW's requested discovery meets the <u>Commercial Drapery</u> standard.

### 3. The discovery CREW seeks is intended to give full force and effect to the defendants' preservation obligations and therefore satisfies either the reasonableness test or the <u>Notaro</u> standard.

In arguing that CREW has not met the "reasonableness" test for expedited discovery, defendants rely heavily on their so-called "preservation assurances" that they claim "obviate the need for any discovery." Ds' Consol. Opp. at 18. As discussed herein, however, this is far from the case. Even in the face of this Court's preservation order, defendants are still claiming a unilateral right to preserve only that which they deem "relevant," to the exclusion of data and data storage systems that on their face appear to fall within the express language of the Court's

---

[5] Nor is there an administrative record from which the Court can evaluate defendants' compliance with the Federal Records Act.

11

order.  Far from obviating the need for discovery, these "assurances" highlight the critical

importance of the requested discovery, which will help define the parameters of the universe of

data subject to the preservation order.

Second, defendants argue that the requested discovery is over broad, unduly burdensome

and wasteful of the Court's and parties' resources.  Ds' Consol. Opp. at 18-19.  To the contrary,

the requested discovery serves one primary purpose:  ascertaining the universe of data that can

be used to restore the missing emails.  It can hardly be wasteful to engage in discovery that will

give proper meaning and effect to the preservation order already in place.  Moreover, any claims

of burden and over breadth are properly addressed in a motion for a protective order pursuant to

Rule 26(c) of the Federal Rules of Civil Procedure; standing alone, however, they are not a basis

to deny all discovery outright.[6]

Defendants argue alternatively that CREW's request for expedited discovery should be

decided under the more stringent Notaro standard, suggesting that such a test more properly

applies in the absence of a tie between the requested discovery and a pending motion for a

preliminary injunction.  Ds' Consol. Opp. at 19.  Defendants misread applicable case law and are

otherwise incorrect in their assessment.  In adopting Magistrate Judge Facciola's Report and

Recommendation, this Court also adopted his finding that CREW satisfies the standards for a

preliminary injunction, the same standards that Notaro applies.

First, as Judge Facciola recognized in Disability Rights Council v. Wash. Metro.Transit

Auth., "[m]ore recent cases have rejected the Notaro test in favor of a reasonableness test,

---

[6] Indeed, these are precisely the kinds of issues that the parties are directed to address in a
Rule 26(f) conference, a conference in which defendants have refused to participate.

particularly in cases w[h]ere the expedited discovery is related to a motion for a preliminary

injunction."  234 F.R.D. 4, 7 (D.D.C. 2006).  Thus, the trend is precisely contrary to what

defendants have suggested.  See Ds' Consol. Opp. at 19 (arguing for Notaro standard based on

decision in Sinclair Nat'l Bank v. Comptroller of the Currency, Civ. No. 00-2398 (D.D.C. 2000),

a case decided six years prior to Disability Rights Council).  In any event, as discussed above,

the expedited discovery that CREW seeks leave to conduct is related directly to the injunction

this Court entered.

     Moreover here, unlike the Sinclair case on which defendants primarily rely, plaintiff has

already demonstrated that it would suffer harm if its request for expedited discovery is denied,

given the discovery's goal of ascertaining the universe of existing data from which the missing

emails can be restored to give full force and effect to the preservation order.  Plaintiff's "fear of

harm," (Ds' Consol. Opp. at 20) was sufficient to warrant entry of the preservation order and it

is equally sufficient to justify the requested expedited discovery.  See Notaro v. Koch, 95 F.R.D.

403, 405 (S.D.N.Y. 1982) (plaintiff seeking expedited discovery  must show "some evidence that

the injury that will result without expedited discovery looms greater than the injury that the

defendant will suffer if the expedited relief is granted.").

    **4.  Defendants have offered no basis to deny the request for a Rule 26(f) conference.**

     Finally, while defendants caption their opposition as one to both plaintiff's motion for

leave to conduct expedited discovery and motion to compel a Rule 26(f) conference, they have

offered no basis whatsoever to deny the motion to compel a Rule 26(f) conference.  Indeed, their

opposition to discovery highlights why such a conference should be conducted immediately to,

among other things, address "any issues relating to disclosure or discovery of electronically

stored information . . ." Fed. R. Civ. P. 26(f)(3).

The need for such a conference is also made manifest by the defendants' persistent refusal to answer questions about what they are currently preserving. Separate and apart from the preservation order this Court entered, defendants are under preservation obligations with respect to the records that are the subject of this lawsuit. Yet the substance and tenor of defendants' communications to date suggest they view their obligations very differently than does CREW, a difference that can be addressed at a Rule 26(f) conference before involving the Court directly in resolving this matter.

Finally, despite the promise of defendants' counsel to "be in touch soon" regarding plaintiff's request for a Rule 26(f) conference,[7] she has yet to contact CREW despite the passage of nearly four weeks. Clearly defendants are engaged in stalling tactics, hoping to put off any action that might reveal precisely what the defendants have and have not done. In the absence of any opposition, the Court should order the parties to immediately conduct a Rule 26(f) conference.

## CONCLUSION

For the foregoing reasons and those set forth in CREW's opening brief, CREW's request for expedited discovery should be granted as well as its motion to compel a Rule 26(f) conference.

> Respectfully submitted,
>
> _____/s/_____
> Anne L. Weismann

---

[7] See Email from Helen Hong to Anne Weismann, October 22, 2007 (Exhibit 2 to CREW's motion for leave to conduct expedited discovery and to compel Rule 26(f) conference).

(D.C. Bar No. 298190)
Melanie Sloan
(D.C. Bar No. 434584)
Citizens for Responsibility and Ethics
  in Washington
1400 Eye Street, N.W., Suite 450
Washington, D.C.  20530
Phone:  (202) 408-5565
Fax:  (202) 588-5020

Attorneys for Plaintiff

Dated: November 20, 2007

**EXHIBIT 1**



**U.S. Department of Justice**
Civil Division

*First Class Mail*
P.O. Box 883
Washington, DC 20044

*Courier Delivery*
Room 6152
20 Massachusetts Avenue, NW,
Washington, DC 20530

Helen H. Hong
Trial Attorney

*Telephone*
*Fax*
*Email*

(202) 514-5838
(202) 616-8460
Helen.Hong@usdoj.gov

November 14, 2007

**VIA FACSIMILE AND ELECTRONIC MAIL**

Anne Weismann
Chief Counsel
Citizens for Responsibility and Ethics in Washington
1400 Eye Street, N.W., Suite 450
Washington, D.C. 20005
Fax: (202) 588-5020

     Re:   <u>CREW v. EOP, et al.</u>, November 13, 2007 Letter

Dear Ms. Weismann:

     I write in response to your letter of November 13, 2007, in order to assure you that defendants are complying and will continue to comply fully with the Court's November 12, 2007 Order ("Order"). Specifically, consistent with the Order, the Office of Administration is preserving, and will continue to preserve, media, no matter how described, presently in its possession or under its custody and control, that were created with the intention of preserving data in the event of its inadvertent destruction. As we have previously represented to you, only the Office of Administration possesses, or has under its custody and control, any media that were created with the intention of preserving data from the official, unclassified Executive Office of the President email system in the event of its inadvertent destruction, and no other EOP component maintains such backup media for this system. Accordingly, although <u>all</u> defendants commit to preserving such media if presently in their possession or under their custody and control, as a practical matter that obligation currently imposes preservation requirements only on the Office of Administration. But to be clear, all defendants are complying, and will continue to comply, with the Court's Order.

     These obligations do not, of course, extend to any back-up system for the National Security Council's classified server. The National Security Council is not a defendant in this action, nor is it subject to the Federal Records Act ("FRA"), and thus the Court's Order cannot be read to reach such information. (Compl. ¶ 9 ("Defendant Executive Office of the President includes the agency known as the EOP as well as its individual agency components that are subject to the Federal Records Act."); <u>Armstrong v. Executive Office of the President</u>, 90 F.3d 553, 567 (D.C. Cir. 1996).) Moreover, we assume that you will agree that the Order does not require defendants National Archives and Records Administration or the Archivist of the United States (the "NARA Defendants") to preserve backup media in their possession, custody or

control. The NARA Defendants do not possess or have custody or control over any media relating to the current EOP email system. Any back up media in the possession or custody and control of the NARA Defendants are therefore not relevant to the allegations in the Complaint.

Finally, we believe you misread the Court's Order as extending beyond "media . . . that were created with the intention of preserving data in the event of its inadvertent destruction." You contend that the Order would apply to "other portable memory storage devices and all other back-up copies under the possession, custody or control of any and all defendants." The Order cannot be read to require preservation of "other portable memory storage devices and all other back-up copies" that were not "created with the intention of preserving data in the event of its inadvertent destruction." (Nov. 12, 2007 Or.) Indeed, you disavowed that you requested such relief in your motion at the hearing before Magistrate Judge Facciola and the Court confirmed, for example, that a potential DVD of saved emails "doesn't have the same function" as a "disaster backup tape." (Oct. 17, 2007 Hrg. Tr. at 10:2-11; see also id. (CREW counsel stating "If individuals within the White House create separately their own DVDs, we had not intended that to be encompassed ").) The disaster recovery tapes that are currently being preserved by the Office of Administration are, as an institutional matter, the only media that were created with the intention of preserving data from the official, unclassified Executive Office of the President email system in the event of its inadvertent destruction. All of the media that were created with the intention of preserving data in the event of its inadvertent destruction for this system are on magnetic tapes – the disaster recovery tapes – and not any other media, such as CDs or DVDs.

Please advise if you disagree so that we may seek clarification from the court, if necessary. If you have further questions or concerns, please contact me at the above e-mail address or phone number.

Sincerely,

Helen H. Hong

# EXHIBIT 2

# CREW | citizens for responsibility and ethics in washington

November 15, 2007

**Via Facsimile and Email**

Helen H. Hong
U.S. Department of Justice
Civil Division
Room 6132
20 Massachusetts Avenue, N.W.
Washington, D.C. 20530
Fax: (202) 616-8460

Re: CREW v. EOP, et al.

Dear Ms. Hong:

Thank you for your prompt reply to my letter of November 13, 2007. We continue to have a number of concerns and questions.

First, your letter represents that only the Office of Administration ("OA") possesses or has under its custody and control "any media that were created with the intention of preserving data from the official, unclassified Executive Office of the President email system . . ." Please define what you mean by "data from the official, unclassified Executive Office of the President email system," as that phrase is not defined anywhere else in this litigation.

Second, your letter states that the obligations in the Court's Order do not extend to the NARA defendants, which you have represented "do not possess or have custody or control over any media relating to the current EOP email system." To the extent the NARA defendants have custody or control over any media relating to any EOP email system in place during the Bush administration they would, in fact, be subject to the obligations of the Court's Order.

Third, it is my understanding that when the OA discovered the millions of missing emails in the fall of 2005, it created a set of back-up tapes that contained a complete set of all emails found on White House servers. A back-up copy of this same data was also placed on the off-site EMC Storage Area Network. Please advise me whether the defendants are preserving both the back-up tapes described in this paragraph as well as the data stored on the off-site EMC Storage Area Network.

Fourth, in January 2007, the OA presented to then White House Counsel Harriet Miers a

Helen H. Hong
Page Two
November 15, 2007

detailed assessment of the missing email problem as well as a plan of recovery. That recovery plan called for restoring the missing emails from then-existing back-up tapes by a process similar to that used in the <u>Armstrong</u> litigation. At that time there were approximately 80,000 back-up tapes available for this purpose. Please advise me whether the defendants are preserving those back-up tapes.

Fifth, you state in your letter that only the disaster recovery tapes currently being preserved by the OA "were created with the intention of preserving data from the official, unclassified Executive Office of the President email system in the event of its inadvertent destruction." You have, however, supplied no basis whatsoever for this statement. Further, the Order is not limited to what was intended to be preserved for disaster recovery "as an institutional matter," the limitation to which your letter recites. Absent affirmative evidence that no other media within the Executive Office of the President were created with the intent to preserve data in the event of its inadvertent destruction, this statement does not reflect compliance with the Court's Order.

For example, it is my understanding that selective sets of emails have been copied and placed onto DVDs that are now being maintained by the White House Office of Records Management. Your letter does not account for these media or explain why they should properly be excluded from the Court's Order. Accordingly, please advise me whether the defendants are preserving those back-up copies.

The information I am requesting is critical to ensure full and effective compliance with the Court's Order. Accordingly, please respond by 5:00 p.m. tomorrow, November 16. If you have any questions in the interim do not hesitate to call me at 202-408-5565.

Sincerely,

ANNE L. WEISMANN
Chief Counsel

cc: Meredith Fuchs
    Sheila L. Shadmand

**EXHIBIT 3**



**U.S. Department of Justice**
Civil Division

| | |
|---|---|
| *First Class Mail*<br>P.O. Box 883<br>Washington, DC 20044 | *Courier Delivery*<br>Room 6132<br>20 Massachusetts Avenue, NW,<br>Washington, DC 20530 |

Helen H. Hong
Trial Attorney

| | |
|---|---|
| *Telephone* | (202) 514-5838 |
| *Fax* | (202) 616-8460 |
| *Email* | Helen.Hong@usdoj.gov |

November 16, 2007

## VIA FACSIMILE AND ELECTRONIC MAIL

Anne Weismann
Chief Counsel
Citizens for Responsibility and Ethics in Washington
1400 Eye Street, N.W., Suite 450
Washington, D.C. 20005
Fax: (202) 588-5020

     Re:    <u>CREW v. EOP, et al.</u>, November 15, 2007 Letter

Dear Ms. Weismann:

     I write in response to your letter of November 15, 2007.

     1. As we have previously assured you, and as explained in our November 14, 2007 letter, the Office of Administration is preserving, and will continue to preserve, the media presently in its possession or under its custody or control that were created with the intention of preserving data from the official, unclassified Executive Office of the President email system in the event of its inadvertent destruction. You have asked what we mean by the phrase the "official, unclassified Executive Office of the President email system." Although we think that phrase is quite clear, for the avoidance of any doubt, it is the official email system for components of the Executive Office of the President routed through unclassified servers, and excludes the classified server described in our November 14, 2007 letter. The "official, unclassified Executive Office of the President email system" is the only email system relevant to the allegations in your Complaint.

     2. The NARA defendants do not have possession, custody, or control over any "media relating to any EOP email system in place during the Bush administration."

     3. We have reviewed your other factual contentions and (as we have done on numerous occasions) we assure you that the defendants are complying and will continue to comply fully with the Court's November 12, 2007 Order. Defendants are fully aware of the Court's Order and

of the obligations imposed on them by it, and are complying with them.[1]

The foregoing representations, together with our numerous prior representations, satisfy any reasonable inquiry into our compliance with our obligations, and we certainly hope that it puts to an end this letter-writing campaign.

Sincerely,

Helen H. Hong

---

[1] You question in your letter what we mean by "institutional matter." At the hearing on the motion for an injunctive order, you noted that you did not intend to seek preservation of, for example, DVDs created separately by "individuals in the White House," but that you sought preservation of media that the defendants used to back up data "as an institutional matter." (Hr'g Tr. at 10:17-24.)

-2-

**EXHIBIT 4**

# CREW | citizens for responsibility and ethics in washington

November 13, 2007

**<u>Via Facsimile and Email</u>**

Helen H. Hong
U.S. Department of Justice
Civil Division
Room 6132
20 Massachusetts Avenue, N.W.
Washington, D.C. 20530
Fax: (202) 616-8460

Re: <u>CREW v. EOP, et al.</u>

Dear Ms. Hong:

Yesterday the Court in the above-referenced case entered an order that provides, in pertinent part:

> defendants shall preserve media, no matter how described, presently in their possess[ion] or under their custody and control, that were created with the intention of preserving data in the event of its inadvertent destruction. Defendants shall preserve the media under conditions that will permit their eventual use, if necessary, and shall not transfer said media out of their custody or control without leave of this court.

Order of November 12, 2007, p. 2.

In response to this order, White House spokesperson Scott Stanzel has been reported as saying "the Office of Administration has been taking steps to maintain and preserve backup tapes for the official e-mail system . . . We will continue preserving the tapes in compliance with the court's order."[1]

The Court's order explicitly imposes on all defendants the obligation to preserve all

---

[1] <u>See</u>, <u>e.g.</u>, Peter Baker, <u>White House Ordered to Keep E-Mails</u>, *The Washington Post*, November 13, 2007; Rebecca Carr, <u>White House Ordered to Keep E-Mails</u>, *Cox News Service*, November 13, 2007.



Helen H. Hong
Page Two
November 13, 2007

media created with the intent of preserving data in the event of its inadvertent destruction, and not simply "backup tapes" in the possession of the Office of Administration. This would include, for example, all data on the backup system that is part of the White House's EMC Storage Area Network, other portable memory storage devices and all other back-up copies under the possession, custody or control of any and all defendants. The statements of the White House suggest that defendants, by limiting their preservation obligations only to backup tapes in the possession of the Office of Administration, may not be complying with the express terms of the Court's order.

Accordingly, please provide me with immediate assurances that defendants are complying and will continue to comply fully with the Court's order, including an explanation of precisely what that entails. If I do not hear from you by close of business tomorrow we will be forced to seek relief from the Court.

Sincerely,

ANNE L. WEISMANN
Chief Counsel

cc: Meredith Fuchs
    Sheila L. Shadmand