# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**EXECUTIVE OFFICE OF THE PRESIDENT, et al.,**<br>**Defendants.** | **Civil Action 07-01707 (HHK)** |
| **THE NATIONAL SECURITY ARCHIVE,**<br>**Plaintiff,**<br><br>**v.**<br><br>**EXECUTIVE OFFICE OF THE PRESIDENT, et al.,**<br><br>**Defendants.** | **Civil Action 07-01577 (HHK)** |

## MEMORANDUM OPINION AND ORDER

Citizens for Responsibility and Ethics in Washington ("CREW") and National Security Archive ("Archive") bring these consolidated actions against the Executive Office of the President ("EOP"), the Office of Administration ("OA"), Alan R. Swendiman, in his capacity as Head of the Office of Administration, the National Archives and Records Administration (NARA), and Dr. Allen Weinstein, in his capacity as Archivist of the United States. Both suits raise claims under the Administrative Procedure Act, 5 U.S.C. § 706, and the Federal Records Act, 44 U.S.C. §§ 2201 *et seq.*, 3010 *et seq.*, and 3301 *et seq.*, challenging defendants' failure to recover, restore, and preserve electronic communications created and/or received within the

White House in violation of the Federal Records Act ("FRA") and their failure to establish an electronic records management system that complies with FRA.  Before the court is defendants' consolidated motion to dismiss [# 39].  Upon consideration of the motion and the oppositions thereto, the court concludes that defendants' motion should be denied.

## I.   BACKGROUND

### A.   Parties

CREW is "a non-profit, non-partisan ethics watchdog group that seeks to deter the unethical and illegal conduct of public officials by publicly disseminating information regarding their conduct."  CREW's Opp'n to Defs.' Mot. to Dismiss at 6.  To achieve this goal, CREW "uses a combination of research, litigation, and public advocacy."  CREW's Compl. ¶ 5. CREW's research is accomplished in part through requests for government records under the Freedom of Information Act.  *Id*. ¶ 6.  The Archive is "a non-partisan, non-profit . . . research institute and library" that "collects, catalogues, indexes, and publishes declassified and unclassified government documentation on national security and foreign affairs policies, practices and activities, and makes such records available to historians, researchers, and individuals throughout the country."  Archive's Opp'n to Defs.' Mot. to Dismiss at 8-9.

CREW and the Archive bring these actions against the EOP, including the agency known as the EOP, as well as its individual components that are subject to FRA.  CREW's Compl. ¶ 9; Archive Compl. ¶ 7.  Plaintiffs name as defendants one of these components, the OA, and its head, Alan R. Swendiman.  Crew's Compl. ¶¶ 10-11; Archive's Compl. ¶¶ 8-9.  Also named as defendants are the National Archives and Records Administration ("NARA") and Archivist of the United States, Dr. Allen Weinstein, who supervises and directs NARA.  Crew's Compl. ¶¶ 12-13; Archive's Compl. ¶¶ 10-11.

### B.      Statutory Background

The Federal Records Act ("FRA") is a collection of statutes that sets forth federal agencies' records creation, management, and disposal duties. *See* 44 U.S.C. §§ 2101 *et seq.*, 22901 *et seq.*, 3101 *et seq.*, 3301 *et seq.*  FRA "is intended to assure, among other things, "[a]ccurate and complete documentation of the policies and transactions of the Federal Government," "[c]ontrol of the quantity and quality of records produced by the Federal Government," and "[j]udicious preservation and disposal of records." *Armstrong v. Executive Office of the President*, 1 F.3d 1274, 1278 (D.C. Cir. 1993) (*Armstrong II*) (*citing* 44 U.S.C. §§ 2902(1), (2), (5)).

To accomplish FRA's goals, each agency head must (1) "'make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures and essential transactions of the agency and designed to furnish the information necessary to protect the legal and financial rights of the Government and of persons directly affected by the agency's activities,'" (2) "establish and maintain an active, continuing program for . . . economical and efficient [records] management,'" and (3) "'establish safeguards against the removal or loss of records [the agency head] determines to be necessary and required by regulations of the Archivist.'" *Id.* (*quoting* 44 U.S.C. §§ 3101, 3102, 3105, respectively).

FRA also requires an agency to obtain the Archivist's approval before disposing of any federal record. *Id.*; *see also* 44 U.S.C. § 3303.  To receive this approval, an agency "may submit a schedule of records sought to be discarded to the Archivist, who will sign off on the records' destruction only if she concludes that they do not 'have sufficient administrative, legal, research, or other value to warrant their continued preservation.'" *Armstrong II*, 1 F.3d at 1279 (*quoting*

3

44 U.S.C. § 3303a(a)).  Alternatively, the agency may destroy "certain common types of records pursuant to disposal schedules promulgated in advance by the Archivist (the disposal schedules are, of course, designed to take into account the FRA's goal of preserving documents of "administrative, legal, research, or other value")."  *Id.* (*quoting* 44 U.S.C. § 3303a(d)).

The Archivist has additional duties besides approving records for disposal.  The Archivist must (1) "'provide guidance and assistance to Federal agencies with respect to ensuring adequate and proper documentation of the policies and transactions of the Federal Government and ensuring proper records disposition,'" (2) "'promulgate standards, procedures, and guidelines with respect to records management,'" and (3) "'conduct inspections or surveys of the records and the records management programs and practices within and between Federal agencies.'"  *Id.* (*quoting* 44 U.S.C. §§ 2904(a), 2904(c)(1), 2904(c)(7), respectively).

The Archivist also plays a role in FRA's enforcement:

> If she discovers that an FRA provision has been or is being breached, the Archivist must (1) inform the agency head of the violation and suggest corrections and (2) if ameliorative measures are not undertaken within a reasonable time, submit a written report to Congress and the President.  *Id.* § 2115(b).  Also, should the Archivist become aware of any "actual, impending, or threatened unlawful removal, defacing, alteration, or destruction of records in the custody of [an] agency," she must notify the agency head of the problem and assist the agency head in initiating an action through the Attorney General for the recovery of wrongfully removed records or for other legal redress.  *Id.* § 2905(a) . . . If the agency head is recalcitrant in pursuing legal remedies, the Archivist herself is to (1) request the Attorney General to initiate action and (2) inform Congress that she has made that request.  *Id.* § 2905(a).

*Id.*

Similarly, agency heads are required to notify the Archivist of any unlawful destruction or removal of records and to seek legal action through the Attorney General to recover the records.  *Id.* (*citing* 44 U.S.C. § 3106).

4

### C.      Factual Background

Plaintiffs' claims for relief are based on the following factual allegations.[1]  From 1994 to 2002, the Automated Records Management System ("ARMS") "automatically captured, preserved and categorized all e-mail sent through the White House e-mail system," and separately segregated, categorized and archived records subject to FRA and those subject to the Presidential Records Act ("PRA").  CREW's Compl. ¶ 31; Archive's Compl. ¶ 29.  ARMS also had controls that "prevented the accidental or intentional deletion of e-mails."  *Id.*

In 2002, the EOP discontinued ARMS and did not replace it with any other system to automatically preserve White House e-mails or to categorize and separately archive FRA and PRA records.  CREW's Compl. ¶ 32; Archive's Compl. ¶ 30.  "As a result, since 2002, it has been possible for any e-mails housed on the White House servers to be manually deleted by anyone who has access to the servers."  CREW's Compl. ¶ 32.  OA determined that "hundreds of days" of White House e-mails created between March 2003 and October 2005 were missing, amounting to at least five million e-mails that "had been deleted from the servers and were recoverable only on back-up tapes."  Crew's Compl. ¶ 34; Archive's Compl. ¶ 32.  OA concluded that either server malfunction or manual deletion caused the loss of the e-mails. Crew's Compl. ¶ 35; Archive's Compl. ¶ 33.  Although OA developed a plan to recover the missing e-mails and both OA and EOP developed a new records management system, "the White House has failed to implement any course of action to either recover the deleted e-mails from existing back-up tapes or implement an appropriate and effective electronic management system. Crew's Compl. ¶¶ 37-39.

---

[1]  "[A] judge ruling on a defendant's motion to dismiss a complaint, 'must accept as true all of the factual allegations contained in the complaint.'"  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1975 (2007) (*quoting Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508, n.1 (2002)).

### D.      Plaintiffs' Complaints

Plaintiffs bring these suits alleging that the Archivist, the EOP, OA, and the heads of its other components are aware that millions of federal and presidential records have been deleted and that no adequate system is in place to ensure the preservation of such records, and have violated FRA by refusing to take corrective action.  Crew's Compl.  ¶¶ 44, 45, 48; Archive's Compl.  ¶¶ 39, 40, 43.  Claims One through Four seek to compel the Archivist, EOP, and OA to initiate action through the attorney general to restore the deleted e-mails before they become irrecoverable.  Specifically, Claim One alleges that the Archivist has violated his duty under FRA to request that the attorney general take action to recover the missing e-mails, and seeks an order compelling the Archivist to request such action.  Claim Two alleges that the EOP and OA have violated their duty as agency heads to request that the attorney general take action to recover the missing e-mails and seeks an order compelling EOP and OA to request such action.  Claims Three and Four seek writs of mandamus ordering the Archivist (Claim Three) and EOP and OA (Claim Four) to request that the attorney general take action to recover the missing e-mails.

Claims Five though Eight seek to compel the Archivist, EOP, and OA to establish an adequate records management system for archiving and preserving White House e-mails. Specifically, Claim Five seeks an injunction compelling the Archivist to fulfill his duties under FRA to establish such a system, while Claim Six seeks the same relief with respect to the EOP and OA.  The final two claims request writs of mandamus requiring the Archivist (Claim Seven) and the EOP and OA (Claim Eight) to ensure the establishment of an adequate records management system.

## II.   ANALYSIS

Defendants advance five arguments as to why the claims brought by CREW and the Archive should be dismissed: (1) compliance with the Presidential Records Act is not subject to judicial review; (2) the injunctive relief CREW and the Archive seek is not available under FRA; (3) CREW and the Archive plaintiffs lack Article III standing; (4) EOP is an improperly named party; (5) claims for writs of mandamus are duplicative of plaintiffs' claims for relief under the APA.  To these arguments the court now turns.

### A.       The Relief Plaintiffs Seek is not Precluded by the Presidential Records Act

Defendants contend that plaintiffs' claims regarding presidential records must be dismissed because "[j]udicial review of compliance with the PRA is simply unavailable."  Defs.' Mot. to Dismiss at 11.  Defendants admit that "NSA and CREW do not specifically reference the Presidential Records Act ("PRA") as the basis for any one cause of action," but claim that plaintiffs nonetheless "have made clear that they seek to use their complaints to seek relief relating to Presidential records."  Defs.' Mot. to Dismiss at 10.  Defendants argue that all claims seeking relief relating to "PRA-covered records" must be dismissed, or alternatively, stricken under Federal Rule of Civil Procedure 12(f).  *See* Fed. R. Civ. P.  12(f) ("The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.").

CREW and NSA respond that they are not challenging the defendants' failure to comply with PRA obligations nor seeking relief for any records covered by the PRA.  Rather, plaintiffs' claims request "that federal and presidential records be maintained separately, rather than in commingled form as is currently the case, because there are separate and differing obligations

that attach to federal and presidential records." CREW's Opp'n to Defs.' Mot. to Dismiss at 16;

*see also* Archive's Opp'n to Defs.' Mot. to Dismiss at 20-22.   For example, federal records are

subject to FOIA and FRA's "strict document management regime supervised by the Archivist,"

while presidential records are not.   *Id.*   For its part, the Archive explains that related to review of

presidential records may never be necessary in this case, but the law nevertheless permits limited

review under the PRA.   The court agrees with plaintiffs that PRA does not bar plaintiffs' claims.

Defendants are incorrect that no judicial review of compliance with PRA is available.

PRA does allow "limited review to assure that guidelines defining Presidential records do not

improperly sweep in nonpresidential records."   *Armstrong II*, 1 F.3d at 1290.   Specifically,

> [T]he courts are accorded the power to review guidelines outlining what is, and what is not, a "presidential record" under the terms of the PRA.   The PRA does not bestow on the President the power to assert sweeping authority over whatever materials he chooses to designate as presidential records without any possibility of judicial review.   Rather, it provides that all materials that were subject to the FOIA, 5 U.S.C. § 552, prior to the passage of the PRA remain subject to the FOIA and do not qualify as "presidential records."   Thus, the court may review the EOP guidelines for the limited purpose of ensuring that they do not encompass within their operational definition of presidential records materials properly subject to the FOIA.

*Id.* at 1290.   In so holding, the D.C. Circuit reasoned that "[t]his narrow, clearly defined

limitation on the scope of the PRA is absolutely essential to preventing the PRA from becoming

a potential presidential *carte blanche* to shield materials from the reach of the FOIA."   *Id.* at

1292.

While "the PRA impliedly precludes judicial review of the President's decisions

concerning the creation, management, and disposal of presidential records during his term of

office," *Armstrong II*, 1 F.3d at 1294, none of plaintiffs' claims seek such review.   *See Citizens*

*for Responsibility and Ethics in Washington v. Cheney*, 2008 WL 4456871, at *2 (D.D.C. Oct. 5,

2008) ("[T]he D.C. Circuit expressly recognized in *Armstrong v. EOP*, 1 F.3d 1274 (D.C. Cir.1993), that district courts may review Presidential Records Act classification decisions (and guidelines related thereto) of the sort that are at issue in this litigation, and this Court is complying with the framework set forth by the D.C. Circuit's Armstrong opinions.").  Because plaintiffs do not seek relief precluded by the PRA, the court rejects defendants' motion to dismiss on those grounds.

### B.      The Relief Plaintiffs Seek is not Precluded by the Federal Records Act

Defendants argue that plaintiffs' FRA claims are non-justiciable because the injunctive relief they seek is unavailable.  In particular, defendants contend the court does not have jurisdiction to order to the retrieval of federal records, as plaintiffs seek in Claims One through Four, nor to order defendants to establish an adequate records management system for preserving and archiving White House e-mails, as sought in Claims Five through Eight.  First, for Claims One through Four, while the defendants may be correct that the court does not have the power to compel defendants to recover records, that is not the remedy plaintiffs seek.  Plaintiffs are not asking the court to enjoin the Archivist, EOP, and OA to recover the deleted e-mails.[2]  Rather, Claims One through Four seek an injunction to compel the Archivist, EOP, and OA to initiate action through the attorney general to restore the deleted e-mails before they become irrecoverable.  As for Claims Five through Eight, defendants are mistaken that plaintiffs are not entitled to relief beyond judicial review of whether defendants' recordkeeping system is arbitrary, capricious, or contrary to law.

---

[2]  For this reason, the court also rejects defendants' argument that "because no cause of action exists to order the restoration of records, plaintiffs' claims are barred by sovereign immunity as well."  Mot. Dismiss at 13 n.4.

In *Armstrong v. Bush,* 924 F.2d 282, 294 (D.C. Cir. 1991) (*Armstrong I*), the D.C. Circuit

delineated the types of judicial review available under FRA.  As an initial matter, it found FRA

"requires the agency head, in the first instance, and then the Archivist to request that the Attorney

General initiate an action to prevent the destruction of documents, thereby precluding private

litigants from suing directly to enjoin agency actions in contravention of agency guidelines."  *Id.*

"Because it would clearly contravene this system of administrative enforcement to authorize

private litigants to invoke federal courts to prevent an agency official from improperly destroying

or removing records," the D.C. Circuit held that "FRA precludes judicial review of such actions."

*Id.*  Accordingly, a plaintiff cannot sue to prevent agency officials from destroying or removing

records or to require agency officials to comply with its recordkeeping guidelines.  *See also*

*Citizens for Responsibility and Ethics in Washington v. U.S. Dep't of Homeland Sec.*, 527 F.

Supp. 2d 101, 111-12 (D.D.C. 2007) ("The FRA . . . precludes a private action, like this one, that

seeks to require agency staff to comply with the agency's recordkeeping guidelines or the FRA,

or to retrieve records lost.  This relief is only available via the FRA's enforcement scheme.").

On the other hand, a court is authorized to review compliance with agency guidelines.

The D.C. Circuit ruled that plaintiffs are entitled to sue when the Archivist and agency head have

failed to fulfill their statutory duty to ask the attorney general to initiate legal action:

> Nothing in the legislative history suggests that Congress intended to preclude judicial
> review of either the agency head's or the Archivist's failure to take enforcement action.
> Indeed, judicial review of the agency head's and Archivist's failure to take enforcement
> action reinforces the FRA scheme by ensuring that the administrative enforcement and
> congressional oversight provisions will operate as Congress intended.  Unless the
> Archivist notifies the agency head (and, if necessary, Congress) and requests the Attorney
> General to initiate legal action, the administrative enforcement and congressional
> oversight provisions will not be triggered, and there will be no effective way to prevent
> the destruction or removal of records.  Thus, if the agency head or Archivist does nothing

> while an agency official destroys or removes records in contravention of agency
> guidelines and directives, private litigants may bring suit to require the agency head and
> Archivist to fulfill their statutory duty to notify Congress and ask the Attorney General to
> initiate legal action.

924 F.2d. at 295; *see also id.* at 296 & n.12 ("On the basis of such clear statutory language

mandating that the agency head and Archivist seek redress for the unlawful removal or

destruction of records, we hold that the agency head's and Archivist's enforcement actions are

subject to judicial review. . . [T]he mandatory statutory language . . . indicates that the agency

head and Archivist are required to take action to prevent the unlawful destruction or removal of

records and, if they do not, private litigants may sue under the APA to require them to do so.");

*CREW v. U.S. Dep't of Homeland Sec.*, 527 F. Supp. 2d at 111 ("The APA . . .  authorizes the

Court to entertain a claim that the head of the DHS or the Archivist have breached their statutory

obligations to take enforcement action to prevent an agency official from improperly destroying

records or to recover records unlawfully removed from the agency.").  This is precisely the nature

of the relief plaintiffs seek in Claims One through Four.

A district court is also authorized review the adequacy of an agency's recordkeeping

guidelines and directives because "neither the statutory scheme nor the legislative history evinces

a congressional intent to preclude judicial review of the adequacy of the [agency's]

recordkeeping guidelines and directives."  *Armstrong I*, 924 F.2d at 292-93; *see also CREW v.*

*U.S. Dep't of Homeland Sec.*, 527 F. Supp.2d at 111  ("[T]he APA authorizes judicial review of a

claim — properly pleaded, of course — that the DHS's recordkeeping policies are arbitrary and

capricious and do not comport with the requirements of the FRA.").  The D.C. Circuit held that

preclusion of judicial review was not appropriate because first, "judicial review of the

[defendants'] recordkeeping guidelines and directives is necessary to protect plaintiffs' interests because, if the guidelines are both inadequate and unreviewed, documents that plaintiffs would otherwise be able to study will be destroyed." *Armstrong I*, 924 F.2d at 293.  Second, "judicial review of the guidelines and directives will not impede the 'effectiveness of the agency in carrying out its congressionally assigned role.'" *Id.*  Third, "the only issue a court would be asked to consider, *i.e.*, the adequacy of appellants' recordkeeping guidelines and directives, is clearly appropriate fore judicial review" as "[c]ourts review the adequacy and conformity of agency regulations and guidelines with statutory directives every day." *Id.*

Defendants take issue with the remedy plaintiffs seek upon review of the existing recordkeeping guidelines.  As the D.C. Circuit held in a subsequent opinion in *Armstrong*, the injunctive relief plaintiffs seek in Claims Four through Eight is appropriate under FRA. *Armstrong II*, 1 F.3d at 1281.  On remand, the district court in *Armstrong* had (1) declared that defendant agencies' current guidelines were arbitrary and capricious and contrary to law; and (2) enjoined the Archivist to 'seek the assistance of the Attorney General with notice to Congress, and take all necessary steps to preserve, without erasure, all electronic Federal Records generated at the defendant agencies." *Id.*  The D.C. Circuit upheld the relief granted, rejecting the government's contention that the injunctive order "swe[pt] too broadly." *Id.* at 1288 n.12. Because the Archivist had failed to take any action to prevent the statutory violations, the D.C. Circuit held that "the district court did not abuse its discretion in ordering the Archivist to take the specific action provided for in the statute." *Id.*  The D.C. Circuit was also unpersuaded by the government's contention that the district court should not have enjoined the defendant agencies from destroying any electronic records until new guidelines were in place, reasoning that

12

"[b]ecause these systems continue to produce federal records, the district court used its discretion appropriately in insisting upon a full-scale method for preventing the records' destruction until the agencies came up with new, adequate records management guidelines to replace the ones voided by the district court's declaratory order." *Id.*

Consequently, this court is empowered to review the adequacy of defendants' recordkeeping guidelines as plaintiffs seek.  While it is premature at this stage in the case for the court to determine what, if any, relief will be appropriate, the court find that the relief plaintiffs seek does not require dismissal of plaintiffs' FRA claims.[3]  Plaintiffs Claims One through Eight are justiciable and will not be dismissed.

### C.      Plaintiffs Have Article III Standing

Even if plaintiffs' claims are justiciable, defendants assert that they must be dismissed because CREW and the Archive lack Article III standing.  "To have Article III standing, a plaintiff must demonstrate an 'actual or immediate' 'injury-in-fact' that is 'fairly traceable' to the challenged conduct and 'likely' to be 'redressed by a favorable decision.'"  *Tozzi v. U.S. Dep't of Health and Human Servs.*, 271 F.3d 301, 307 (D.C. Cir. 2002) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992)).[4]

---

[3]  Moreover, contrary to defendants' assertions, plaintiffs do not seek an injunction compelling defendants to establish a specific record-management system through their claim for relief for "an adequate archival system, similar in function to ARMS, for the archival and preservation of e-mails."  By referring to ARMS, plaintiffs are simply alleging that ARMS satisfied FRA's requirements to archive and preserve e-mails unlike the alleged shortcomings of the present system.  Plaintiffs are not, for example, seeking an injunction compelling defendants to reinstitute the ARMS system.

[4]  "These requirements apply to individual plaintiffs, as well as to organizations asserting standing on their own behalf or on behalf of their members."  *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378 (1982).

Defendants fault CREW and the Archive for failing to allege an injury in fact to support their claims and failing to establish that the injuries alleged in Claims One through Four are likely to be redressed by the requested relief.  The court addresses each argument in turn.

### 1.     *Plaintiffs Have Alleged an Adequate Injury in Fact*

Article III standing requires that plaintiffs demonstrate that they have suffered an "injury in fact" that is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs*., 528 U.S. 167, 181 (2000). "'Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate-as opposed to merely conjectural or hypothetical-threat of future injury.'" *American Historical Ass'n v. Nat'l Archives and Records Admin*., 516 F. Supp. 2d 90, 105 (D.D.C. 2007) *(quoting Natural Res. Def. Council v. Pena*, 147 F.3d 1012, 1022 (D.C. Cir. 1998)) (internal quotation omitted).

First, defendants contend that in their first four claims concerning the restoration of deleted e-mails, CREW does not allege a distinct and palpable injury to themselves, rather only one shared in equal measure by all or a large class of citizens.  Second, defendants argue CREW alleges only speculative or hypothetical claims of future harm instead of establishing they have suffered real and immediate harms.  Defendants discount each plaintiff's alleged injury.  As for the Archive, "[w]ithout claims of any harm from actual denied access to federal records because of defendants' actions, [the Archive] cannot complain of the actual or impending injury required to furnish constitutional standing to sue."  Defs.' Mot. to Dismiss at 19.  For its part, "though CREW alleges that it currently has pending FOIA requests, it does not allege that any requests are pending that would cover the allegedly missing federal records."  *Id*. at 19-20.  Defendants

also take issue with both CREW and NSA's claims Four through Eight, maintaining that the alleged injury is based on speculation "that federal records will go missing under the current archival system" and that plaintiffs "will suffer future harm through denial of access to those federal records." *Id.* at 20.

Plaintiffs counter that they have plead injury in fact supporting their claims for injunctive relief because they will request federal records in the future and the records are likely to be missing due to defendants' conduct. Plaintiffs have the better argument.

CREW explains that it "seeks to deter the unethical and illegal conduct of public officials by publicly disseminating information regarding their conduct." CREW's Opp'n to Defs.' Mot. to Dismiss Ex. 2 (Decl. of Sloan at ¶ 2). Its complaint alleges that defendants actions are "harming plaintiff by denying it current and future access to important historical documents that would shed light on the conduct of public officials." CREW's Compl. ¶¶ 53, 58, 65, 72, 79, 86, 94, 102. In addition, CREW responds that it frequently requests records under FOIA and currently has pending requests with the Office of Management and Budget, OA, and the Council on Environmental Quality ("CEQ"). CREW understands that "a significant percentage" of CEQ e-mails are among the millions of e-mails missing, so that it is "virtually certain" that some of records CREW has requested is among the missing e-mails. CREW adds that defendants "are in exclusive control of the facts that would establish definitively that e-mails CREW seeks have been deleted or are subject to deletion on an ongoing basis." CREW's Opp'n to Defs.' Mot. to Dismiss at 23 n.19. CREW asserts that "it will continue to file FOIA requests, including requests of agencies within the EOP, given CREW's commitment to transparency in government, its efforts to combat the actions of this administration to undermine transparency in government and

CREW's commitment to educating citizens about how President Bush and his administration perform their duties and responsibilities." *Id.*

For its part, the Archive explains that it uses federal records in two ways: its researchers function as journalists and historians who disseminate "publications, records, compilations, documentary film, and conferences and other events," and it also serves "as an archivist or librarian of records, maintaining indexed archives of federal records that can be access by researchers and that are made available to the public in hard copy and online."  Archive's Opp'n to Mot. to Dismiss at 23.  The Archive uses records obtained through FOIA requests and mandatory declassification review requests and made public by release under the PRA or declassification.  The Archive contends that due to the destruction of the e-mails at issue, "[t]his current denial of access constitutes an ongoing injury that is likely to continue to injure the Archive in different and recurring ways each time it seeks access to these portions of the historical record that have been or will be destroyed." *Id.* at 24.  In its complaint, the Archive alleges that defendants' action are "harming Plaintiff by denying it future access to these important historical documents."  Archive's Compl. at ¶¶ 48, 53, 60, 67, 74, 81, 89, 97. Moreover, the Archive asserts that it is "a frequent FOIA requester and has requested federal records from the EOP and OA; it presently has records requests pending in front of multiple EOP components, including OA; and it is certain to request federal records from EOP components in the future."  Archive's Opp'n to Mot. to Dismiss at 23.

Defendants rely on *Citizens for Responsibility and Ethics in Washington v. U.S. Department of Homeland Security*, 527 F. Supp. 2d 101 (D.D.C. 2007) to argue that CREW fails to allege injury in fact for Claims One though Eight, and that the Archive fails to do for claims

16

Four through Eight.  In *CREW v. Department of Homeland Security*, CREW brought suit under

FOIA, FRA, and APA, challenging the Secret Service's failure to respond to its FOIA request

and the legality of DHS's recordkeeping guidelines for White House visitor records.  *Id*. at 102.

The court held that CREW had properly alleged a past injury in fact due to defendants' failure to

respond to its FOIA request in a timely fashion.  The court rejected, however, CREW's claim

that it would be "'subject to a continuing injury'" because it would "'continue to use FOIA to

gain access to agency records that relate to the propriety of government activity.'"  *Id.* at 106.

Such alleged future injuries "while certainly plausible — are too speculative and remote at this

point to give CREW standing to seek prospective relief."  *Id.*  The court went on to explain that:

> [W]hile CREW may allege that FOIA requests comprise a "part of its research"
> work, . . . , nothing in the record before the Court suggests how frequent these requests
> are made, which agencies are subject to these requests, and whether (or when) CREW
> expects to file future FOIA requests.  Most notably, CREW does not allege anywhere in
> its complaint or opposition brief that it has a FOIA request pending with the DHS or that
> it intends to file a specific FOIA request with the DHS for WAVES records in the near
> future.  Without this information, the Court cannot say that the alleged future injury is
> either real or imminent.  That CREW may one day file another FOIA request with the
> DHS does not represent a cognizable, palpable injury which presents a case or
> controversy for the Court to consider.

In contrast to the record in *CREW v. Department of Homeland Security*, in the record

before this court, CREW and the Archive each allege that they have FOIA requests for e-mails

currently pending with the EOP and OA[5] and intend to file future requests for e-mails.[6]

---

[5]  Defendants also assert that a pending request with OA cannot constitute harm sufficient
to establish injury in fact because OA is not an "agency" under FOIA and therefore FRA.  Defs.'
Mot. to Dismiss at 17 n.5.  The issue of whether OA is an agency was recently decided in
*Citizens for Responsibility and Ethics in Washington v. Office of Administration*, 565 F. Supp. 2d
23, 26 (D.D.C. 2008).  The court ruled that OA is not an agency under FOIA and dismissed
CREW's action against OA because it was therefore not obligated to comply with CREW's
FOIA request  *Id.*  It follows that because OA is not an agency under FOIA, its records need not
be managed in compliance with the FRA.  *Armstrong v. Executive Office of the President*, 90

The court finds that CREW and the Archive have therefore alleged a real and immediate, not merely speculative, threat of future injury.'" *Public Citizen v. Carlin,* 2 F. Supp. 2d 1, 6 (D.D.C. 1997) (Plaintiffs who filed "FOIA requests for electronic documents in the past and intend to request records in electronic form in the future . . . have demonstrated through their declarations that they face a real risk that records will not be available to them in electronic form."), *rev'd on other grounds*, 184 F.3d 900 (D.C. Cir. 1999). As for Claims One through Four, plaintiffs allege that unless the deleted are restored under FRA enforcement scheme, they will not be able to obtain these federal records through their pending and future requests and

---

F.3d 553, 567 (D.C. Cir. 1996) (holding that the National Security Council is not an agency under FOIA and therefore its record management need not comply with FRA). Nevertheless, the court finds that OA's status as an agency under FOIA and FRA does not affect plaintiffs' alleged injury in fact, nor OA's status as a party in this case.

First, the injury alleged does not rely on requests pending before OA. CREW has requests pending with the Office of Management and Budget and the Council on Environmental Quality. The Archive also has requests pending before other EOP components and additionally states that it obtains documents not only through FOIA but also through mandatory declassifications. Second, OA's role in this suit is distinguishable from its role in *CREW v. OA*. Here, OA is sued, at least in part, because it "has possession and control of back-up tapes containing many of the deleted records at issue in this case." CREW's Compl. ¶ 10; Archive's Compl. ¶ 8. While OA itself may not be subject to FRA, it has possession and control of back-up tapes containing records of EOP and EOP components that remain subject to FRA.

[6] In addition to its pending requests with the Office of Management and Budget, the Council on Environmental Quality, and the Office of Administration, CREW states that it will continue to file FOIA requests with EOP components in the future, and "has already identified at least two specific FOIA requests it anticipates filing in the near future: one with EQ as a follow-up to its FOIA request for documents related to global warming and one with OA once that component's status as an agency subject to the FOIA has been resolved in pending litigation." *Id*. at 3-4. As for the Archive, it asserts that it has over 90 requests pending before the EOP and its components, each of which include requests for e-mails. Archive's Surreply to Defs.' Mot. to Dismiss at 3-4. The Archive has also identified specific document sets and areas of ongoing research likely to lead to future requests for federal records maintained by EOP or its components. *Id.* at 4

therefore suffer real injury.  Moreover, unless adequate preservation guidelines are promulgated

and a recordkeeping system implemented as sought in Claims Five through Eight, plaintiffs

allege that even more e-mails will be lost in the future, further shrinking the pool of records

plaintiffs can use in their work.  Accordingly, the court finds that CREW and the Archive have

sufficiently alleged injury in fact.[7]

**2.    *Plaintiffs' Injury in Fact Is Likely to Be Redressed by the Relief They Seek***

Defendants next assert that plaintiffs's Claims One through Four fail to satisfy the

redressability prong of Article III standing because "plaintiffs' relief is dependent on a third party

not subject to this suit," namely the attorney general.  Defs.' Mot. to Dismiss at 22.  Defendants

argument is misguided.  Plaintiffs's complaints do not request an order requiring the attorney

general to take any action.  Rather, they seek precisely the relief outlined in FRA and upheld by

the D.C. Circuit: an order requiring the Archivist and agency head to ask the Attorney General to

initiate legal action.  *Armstrong I*, 924 F.2d at 295, 296 & n.12.

---

[7] In their reply, defendants claim that CREW is "barred" from pursuing its claims because it "makes no claim to the professional or occupational need for the type of historians, journalists, teachers, film writer or attorneys for whom the court in *Webster I* found standing and adequate injury in fact."  Defs.' Reply in Support of its Mot. to Dismiss at 14 (*citing American Friends Serv. Comm. v. Webster*, 485 F. Supp. 222, 227 (D.D.C. 1980)).  Rather, defendants contend, CREW is "an organization with political purposes" like those in *Webster*, and as a result, cannot plead injury in fact.  Defendants are incorrect.  Contrary to defendants' argument, a plaintiff's status as a political organization is not necessarily fatal to its ability to plead injury in fact.  Defendants acknowledge that the court in *Webster* found it "'unsettled whether the requisite injury-in-fact standard is met by a claim that government documents, earmarked for destruction, are needed for organizational political purposes,'" *Id*. at 13 (*quoting Webster*, 485 F. Supp. at 227), but do not go on to note that the court found it "not necessary to decide that question here because even if the organizations in this category of plaintiffs have failed in that regard, the plaintiffs in the other groups have adequately shown injury for standing purposes."  The court finds that CREW's professed need for the records at issue is more akin to that of "historians, journalists, teachers, film writers or attorneys," but even if it is an organization with political purposes, *Webster* does not, as defendants allege, "bar[] CREW from pursuing any of its claims." Defs.' Mot. to Dismiss at 13.

Having found that plaintiffs adequately plead future injury in fact, the court finds that

their injuries will be redressed by the relief available under FRA. *Compare Citizens for*

*Responsibility and Ethics in Washington v. Dep't of Homeland Sec.*, 527 F. Supp. 2d at 107 n.7

(finding that where CREW was "[u]nable to allege a cognizable future injury-in-fact," CREW

failed to satisfy the element of redressability because "[p]rospective relief, like a declaratory

judgment, will not redress CREW's past injuries").

### D.    Plaintiffs Have Stated Claims for Writs of Mandamus.

Defendants further argue that plaintiffs' claims seeking writs of mandamus should be

dismissed because these claims are duplicative of plaintiffs' claims for APA review.  According

to defendants, Claims Three and Four are substantially identical to Claims One and Two, while

Seven and Eight are substantially identical to Five and Six, except that Three, Four, Seven, and

Eight are brought as requests for mandamus relief rather than under the APA.  Defendants also

contend for the first time in their reply that plaintiffs do not state a claim for mandamus relief

because the defendants do not have a clear duty to act.

Plaintiffs respond that the claims for writs of mandamus should not be dismissed because

there is no there is no administrative means to challenge defendants' failure to comply with FRA.

If relief is not available under the APA, as defendants argue throughout their motion to dismiss,

then mandamus is appropriate.  Finally, plaintiffs assert that the have stated claims for mandamus

because defendants have a clear duty to act under FRA.  The court agrees with plaintiffs.

Mandamus relief is a "'drastic'" remedy appropriate only in "'extraordinary

circumstances.'"  *Fornaro v. James,* 416 F.3d 63, 69 (D.C. Cir. 2005) (*quoting Allied Chem.*

*Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980)).  A plaintiff is entitled to mandamus relief "only if

(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is

no other adequate remedy available to plaintiff." *Id.* (*quoting Power v. Barnhart*, 292 F.3d 781,

784 (D.C. Cir. 2002).

Defendants' argument that plaintiffs cannot establish that defendants have a clear duty to

act is directly contrary to the D.C. Circuit's holding in *Armstrong I*, 924 F.2d at 295. There, the

Court held

> [T]he decision to seek the initiation of an enforcement action to prevent the destruction or
> removal of records is not committed by law to the agency head's or Archivist's
> discretion. . . . Because the FRA enforcement provisions leave no discretion to determine
> which cases to pursue, the agency head's and Archivist's decisions are *not* committed to
> agency discretion by law.  In contract to a statute that merely *authorizes* an agency to take
> enforcement action as it deems necessary, the FRA *requires* the agency head and
> Archivist to take enforcement action.

*Id.*  The agency head and Archivist plainly have a duty to take enforcement action when

necessary.

Similarly, claims Seven and Eight concern the requirement that defendants comply with

FRA.  The fact that the statute does not dictate precisely how compliance must be accomplished

in no way lightens their legal duty to comply.  *See also id.* at 293 ("Although the FRA

understandably leaves the details of records management to the discretion of individual agency

heads, it does contain several specific requirements, including the requirement that each agency

head shall cooperate with the Archivist and develop a program that is consistent with the

Archivist's regulations.").

As for defendants' contention that the claims for mandamus must be dismissed as

duplicative to plaintiffs's APA, the court disagrees.  At this time, the court cannot rule as a

matter of law that plaintiffs will not be entitled to mandamus relief.  *Judicial Watch, Inc. v. Nat'l*

21

*Energy Policy Dev. Group,* 219 F. Supp. 2d 20, 44 (D.D.C. 2002) ("At this stage of the case, it would be premature and inappropriate to determine whether the relief of mandamus will or will not issue. Certainly whether relief is available under the APA will be relevant to whether the mandamus relief requested will be necessary.  It is sufficient to determine that plaintiffs have stated a claim for relief under the mandamus statute.  Whether or not plaintiffs will prove that claim remains to be seen.").  Accordingly, the court declines to dismiss claims Three, Four, Seven, and Eight of plaintiffs' complaints.

### E.       The Executive Office Of The President Is A Proper Party

Finally, defendants assert that the Executive Office of the President is an improperly named defendant and should be dismissed from the lawsuit.  Because there are units within the EOP that are not subject to FRA, defendants contend, plaintiffs must instead name as defendants only the components that are subject to FRA.  CREW and the Archive counter that the complaint properly names EOP and its individual components that are subject to FRA.  *See* CREW Compl. ¶ 9; NSA Compl. ¶ 7.  The court agrees with plaintiffs.

EOP is a properly named defendant because it is subject to FRA.  *Public Citizen v. Carlin*, 2 F. Supp. 2d 1, 8-9 (D.D.C. 1997) ("Since the Executive Office of the President is an agency for the purposes of the FOIA, it follows under *Armstrong* [*v. Executive Office of the President*, 1 F.3d 1274 (D.C. Cir. 1993)], that the EOP is an agency for purposes of FRA as well."  Moreover, the fact that EOP is a defendant "will not affect components of the EOP that are not governed by the FRA."), *rev'd on other grounds*, 184 F.3d 900 (D.C. Cir. 1999).  Defendants' concern that naming EOP as a defendant "sweep[s] in" components not subject to the FRA is therefore unfounded, and their motion to dismiss EOP as a defendant is without merit.

22

### III.   CONCLUSION

For the foregoing reasons, it is this 10th day of November 2008, hereby

**ORDERED** that defendants' motion to dismiss [#39] is **DENIED**.


Henry H. Kennedy, Jr.
United States District Judge